UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

REYNALDO L. ISRAEL, JR.,

                    Plaintiff,

      v.

MICHAEL J. ASTRUE, Commissioner of
Social Security,

                   Defendant.

Case No. 3:10-cv-05507-RBL-KLS

REPORT AND RECOMMENDATION

Noted for July 15, 2011

      Plaintiff has brought this matter for judicial review of defendant's denial of his

application for supplemental security income ("SSI") benefits. This matter has been referred to

the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule MJR

4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976).

After reviewing the parties' briefs and the remaining record, the undersigned submits the

following Report and Recommendation for the Court's review, recommending that for the

reasons set forth below, defendant's decision to deny benefits should be affirmed.

FACTUAL AND PROCEDURAL HISTORY

      On April 30, 2008, plaintiff filed an application for SSI benefits, alleging disability as of

January 1, 2004, due to neck, back and shoulder problems, scoliosis, anxiety, depression and

REPORT AND RECOMMENDATION - 1

agoraphobia. See Tr. 105, 125.  His application was denied upon initial administrative review and on reconsideration. See Tr. 56, 63.  A hearing was held before an administrative law judge ("ALJ") on May 12, 2009, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. See Tr. 31-53.  Also at that hearing, plaintiff amended his alleged onset date of disability to April 1, 2008. See Tr. 46.

On May 22, 2009, the ALJ issued a decision in which plaintiff was determined to be not disabled. See Tr. 19-30.  Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on May 22, 2010, making the ALJ's decision defendant's final decision. See Tr. 3; see also 20 C.F.R. § 416.1481.  On July 20, 2010, plaintiff filed a complaint in this Court seeking judicial review of defendant's decision. See ECF #1-#3.  The administrative record was filed with the Court on October 1, 2010. See ECF #11.  The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues defendant's final decision should be reversed and remanded for an award of benefits, because the ALJ erred: (1) in evaluating the medical evidence in the record; (2) in assessing plaintiff's residual functional capacity; and (3) in finding him to be capable of performing other jobs existing in significant numbers in the national economy.  For the reasons set forth below, however, the undersigned disagrees that the ALJ erred in determining plaintiff to be not disabled, and therefore recommends that defendant's decision be affirmed.

<u>DISCUSSION</u>

This Court must uphold defendant's determination that plaintiff is not disabled if the proper legal standards were applied and there is substantial evidence in the record as a whole to support the determination. See Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion. See Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. See Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the Court must uphold defendant's decision. See Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I.      The ALJ's Evaluation of the Medical Evidence in the Record

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

REPORT AND RECOMMENDATION - 3

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31.[1] However, the ALJ "need not discuss *all* evidence presented" to him

---

[1] Defendant argues that because Congress did not specifically prescribe standards for evaluating medical evidence in disability decisions, but rather expressly delegated the authority to do so to defendant, and because defendant has not promulgated regulations adopting the "clear and convincing" or "specific and legitimate" standards, but instead only requires an ALJ to provide "good, specific reasons for the weight given a treating source's opinion" (ECF #18, p. 9), that regulatory language is controlling, and therefore this Court should ignore more than 35 years of binding Ninth Circuit precedent. See Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005); Lester, 81 F.3d at 830-31; Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991); Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989); Montijo v. Secretary of Health & Human Services, 729 F.2d 599, 601 (9th Cir. 1984); Day v. Weinberger, 522 F.2d 1154, 1156 99th Cir. 1975). Defendant's argument is not well-taken.

Defendant is correct in pointing out that the Social Security Act delegates to him the "full power and authority to make rules and regulations . . . to . . . provide for the nature and extent of the proofs and evidence and the method of taking and furnishing the same" in disability cases. 42 U.S.C. § 405(a). It is also true that where "Congress has explicitly left a gap for [an administrative] agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation," and therefore that such regulations "are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the [delegating] statute." Chevron v. Natural Resources Defense Council, Inc., 467 U.S. 837, 843-44 (1984). On that basis, defendant argues the "controlling" regulatory language in 20 C.F.R. § 416.927(d)(2), which states that the Social Security Administration "will always give good reasons in [its] notice of determination or decision for the weight [it] give[s the claimant's] treating source's opinion," conflicts with the Ninth Circuit's standard for rejecting such evidence set forth above in Bayliss and Lester, *et al.* See Social Security Ruling ("SSR") 96-2p, 1996 WL 374188 *5("Paragraph (d)(2) of 20 CFR . . . 416.927 requires that the adjudicator will always give good reasons in the notice of the determination or decision for the weight given to a treating source's medical opinion(s).").

There is no conflict here. As indicated, all that regulatory language requires is that "good reasons" be provided with respect to explaining what weight such treating source opinions are given. This appears merely to be for the purpose of making sure the administrative adjudicator's determination is sufficiently explained to those who are tasked with having to later review such determinations. See SSR 96-2p, 1996 WL 374188 *5 ("[T]he notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.") (emphasis added). Indeed, the language of SSR 96-2p – i.e., the adjudicator must provide "specific" reasons in order to make "clear" the weight being given a treating source's medical opinion – echoes the "clear and convincing" and "specific and legitimate" terminology employed by the Ninth Circuit.

Regardless, the fact that "good" reasons for the weight being given to treating medical source opinions is required to be set forth in the administrative adjudicator's decision, says nothing about the standard that must be met in order to be able to reject such opinion evidence. Rather, 20 C.F.R. § 416.927(d)(2) and SSR 96-2p simply do not set forth any specific requirement in regard to the latter, though arguably the rejection of such evidence can be seen as being the same as giving it "no" weight. In any event, there is no question that a reason that is "specific and legitimate," let alone one that is "clear and convincing," also constitutes a "good" reason for rejecting the opinion of a treating medical source. Nor, apparently, has the Social Security Administration seen fit to define the term "good" here, in a

REPORT AND RECOMMENDATION - 4

or her. <u>Vincent on Behalf of Vincent v. Heckler</u>, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." <u>Id.</u>; <u>see</u> <u>also</u> <u>Cotter v. Harris</u>, 642 F.2d 700, 706-07 (3rd Cir. 1981); <u>Garfield v. Schweiker</u>, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. <u>See</u> <u>Lester</u>, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." <u>Batson v. Commissioner of Social Sec. Admin.</u>, 359 F.3d 1190, 1195 (9th Cir. 2004); <u>see</u> <u>also</u> <u>Thomas v. Barnhart</u>, 278 F.3d 947, 957 (9th Cir. 2002); <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." <u>Lester</u>, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." <u>Id.</u> at 830-31; <u>Tonapetyan</u>, 242 F.3d at 1149.

A.    Dr. McRae

Plaintiff challenges the following findings made by the ALJ:

I do not assign substantial weight to the opinion of [examining physician] John McRae, Ph.D. Dr. McRae performed two psychological evaluations in 2005 on referral from [the Washington State Department of Social and Health Services ("]DSHS["]). On both occasions he opined that the claimant had marked functional limitations (Exhibit 14F). However, this was largely based on the claimant's subjective report, which is not entirely credible. I further note that Dr. McRae evaluated the claimant more than two years prior to the

---

manner that would indicate the Ninth Circuit's standard conflicts with the statutory or regulatory framework in these cases, or that the Social Security Administration otherwise heretofore has disagreed with it. Indeed, defendant has not previously attempted to make the kind of argument he is making here, or if he has done so at any time during the past 35 years, that attempt obviously has not been very successful. The undersigned presumes, furthermore, that the Ninth Circuit was well aware of the Supreme Court's decision in <u>Chevron</u> and its progeny, and the language of both 42 U.S.C. § 405(a) and 20 C.F.R. § 416.927(d)(2), in holding as it did in <u>Bayliss</u>, <u>Lester</u> and the like. Therefore, for all of the above reasons, the undersigned rejects defendant's argument here, as should the Court.

current alleged disability onset date.  Subsequent treatment records from Comprehensive Mental Health show the claimant's symptoms improved with psychotropic medication.

Tr. 28.  While the undersigned finds that not all the reasons the ALJ gave here for rejecting the opinion of Dr. McRae are valid, overall the ALJ's rejection thereof was proper.

Plaintiff is correct in pointing out the fact that Dr. McRea evaluated plaintiff more than two years prior to his current alleged onset date of disability is irrelevant, given that plaintiff had originally alleged an onset date of January 1, 2004, based on his claimed impairments, and that the only reason that date was amended to April 1, 2008, is because that date is within "the month of the SSI application." Tr. 46.  In other words, the amended date appears to be based solely on the fact that actual receipt of benefits, once eligibility therefor is granted, is based on the date of application. see 42 U.S.C. § 1382(c)(7) (SSI benefits application of claimant who is found eligible is effective on later of first day of month following date that application is filed, or first day of month following date claimant becomes eligible for such benefits); see also 20 C.F.R. § 416.335 ("When you file an application in the month that you meet all the other requirements for eligibility, the earliest month for which we can pay you benefits is the month following the month you filed the application. If you file an application after the month you first meet all the other requirements for eligibility, we cannot pay you for the month in which your application is filed or any months before that month.").  As such, Dr. McRae's opinions are still relevant in regard to when plaintiff first became disabled, even though actual benefits are grantable therefor beginning only much later.

The undersigned also agrees the ALJ erred in finding Dr. McRae's marked limitations to be "largely based" on plaintiff's "subjective report, which is not entirely credible." Tr. 28.  Each of the evaluation forms completed by Dr. McRae was accompanied by a detailed narrative

report, containing not only Dr. McRae's own personal observations of plaintiff and diagnoses of mental impairments, but also the results of both mental status examinations and psychological testing performed at the time. See Tr. 350-363; Clester v. Apfel, 70 F.Supp.2d 985, 990 (S.D. Iowa 1999) ("The results of a mental status examination provide the basis for a diagnostic impression of a psychiatric disorder, just as the results of a physical examination provide the basis for the diagnosis of a physical illness or injury.") Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987) (opinion based on clinical observations supporting psychiatric diagnosis is competent evidence); Sanchez v. Apfel, 85 F. Supp.2d 986, 992 (C.D. Cal. 2000) ("[W]hen mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnoses and observations of professionals trained in the field of psychopathology.") (quoting Christensen v. Bowen, 633 F.Supp. 1214, 1220-21 (N.D.Cal.1986)).

On the other hand, the ALJ was not remiss in rejecting Dr. McRae's opinion on the basis that subsequent mental health treatment records revealed plaintiff's symptoms for the most part "improved with psychotropic medication." Tr.28; see also Tr. 233, 235-36, 238, 240-42, 245-66, 307-08, 310-13, 315, 317-18, 372-76, 378. Plaintiff argues such improvement is reflected in Dr. McRae's second evaluation report issued in mid-August 2005, in which plaintiff's concentration and memory were noted to be improved, resulting in Dr. McRae finding plaintiff had a moderate limitation in his ability to perform complex tasks (see Tr. 352, 356), not the marked limitation in that area noted in his earlier evaluation (see Tr. 359).

This argument, however, fails to take into account the several marked mental limitations Dr. McRae still found plaintiff had in mid-August 2005. See Tr. 352. In contrast, the subsequent mental health treatment records paint a far less restricted functional picture. See Tr. 233 (denying any current symptoms or other problems); 235 (no overt signs of psychosis); 307 (reporting only

some situational depression, denying hallucinations or delusions and appearing to be stable); 308 (denying any current illness symptoms); 311 (again reporting only some situational depression, denying hallucinations or delusions and appearing to be stable with no overt signs of psychosis); 312-13 (same); 315 (denying any current illness symptoms); 317 (reporting doing better on current medications, denying any increase in illness symptoms and looking stable with no overt signs of psychosis); 318 (denying any current illness symptoms and reporting medications helped with that); 372 (denying any delusional thinking, with no overt signs of psychosis); 373 (no overt signs of psychosis); 374-76 (no overt signs of psychosis and stable on current medications); 378 (denying any delusional thinking, showing no overt signs of psychosis and remaining stable on current medications).

In addition, the above mental health treatment records are dated well <u>after</u> Dr. McRae had issued his evaluation reports, and therefore it is not possible that such improvement was reflected in the later report. Accordingly, such subsequent medical evidence provided a sufficient basis on which the ALJ could rely to reject the much more severely limited functional picture painted by Dr. McCrae in his earlier evaluation reports. <u>See</u> <u>Batson</u>, 359 F.3d at 1195 (ALJ need not accept opinion of treating physician if that opinion is inadequately supported by record as whole); <u>see also</u> <u>Thomas</u>, 278 F.3d at 957; <u>Tonapetyan</u>, 242 F.3d at 1149. Thus, although the other reasons the ALJ gave for rejecting Dr. McRae's opinions are not valid, this last reason alone constitutes a sufficient basis for doing so.

B.     <u>Dr. Mangione-Lambie</u>

Plaintiff also challenges the ALJ's following additional findings:

I do not assign significant weight to the opinion of [examining psychologist] Dr. [Mary G.] Mangione-Lambie[, Ph.D.] (Exhibit 2F). She saw the claimant on only one occasion for a disability evaluation and largely relied on the claimant's subjective report, which is not entirely credible. The claimant did

not know who she was, when queried at the hearing.  [Non-examining psychologist] Dr. [Leslie] Postovoit[, Ph.D.,] noted that the claimant misrepresented his living situation at that evaluation.  The claimant told Dr. Mangione-Lambie that he lived in the woods since 2004.  However, the claimant's brother reported the claimant was living in a shelter, which is a crowded social setting.  As noted by [non-examining psychologist] Dr. [Kristine] Harrison[, Psy.D.], Dr. Mangione-Lambie diagnosed a delusional disorder, which is not supported by the treatment records from Comprehensive Mental Health.  Psychiatric diagnosis is based primarily on an individual's self report.  If an individual exaggerates symptoms, the conclusions reached are inaccurate and unreliable.  I note the claimant performed well on mental status examination at that evaluation. I find the opinion of Dr. Mangione-Lambie has no merit.

Tr. 28.  Specifically, plaintiff argues the fact that Dr. Mangione-Lambie evaluated him only once is not a valid basis for rejecting her opinion.  The undersigned agrees, given that by definition an examining medical source generally will only evaluate a claimant at most once or twice.  The undersigned further notes that defendant himself often has based determinations of non-disability solely or in part on such one-time evaluations.

In addition, plaintiff again correctly notes Dr. Mangione-Lambie did not appear to base her opinion largely on plaintiff's own self-report, since her evaluation report indicates that in addition to relying on that report, Dr. Mangione-Lambie recorded her personal observations of plaintiff, assessed specific diagnoses and conducted a mental status examination. See Tr. 195-201; see also Sanchez, 85 F. Supp.2d at 992 (when mental illness is basis of disability claim, clinical and laboratory data may consist of diagnoses and observations of professionals trained in field of psychopathology); Sprague, 812 F.2d at 1232 (opinion based on clinical observations supporting psychiatric diagnosis is competent evidence); Clester, 70 F.Supp.2d at 990 (results of mental status examination provide basis for diagnostic impression of psychiatric disorder, just as results of physical examination provide basis for diagnosis of physical illness or injury).  Nor does it seem that plaintiff misrepresented his living situation, given that Dr. Mangione-Lambie

noted the fact that he lived at a shelter in her evaluation report. <u>See</u> Tr. 200-01.

Nevertheless, once more despite the above errors, the ALJ did provide at least one proper reason for discounting Dr. Mangione-Lambie's opinion, namely that plaintiff "performed well on [the] mental status examination." Tr. 28; <u>see also</u> <u>Batson</u>, 359 F.3d at 1195 (ALJ need not accept opinion of even treating physician if that opinion is inadequately supported by clinical findings); <u>see also</u> <u>Thomas</u>, 278 F.3d at 957; <u>Tonapetyan</u>, 242 F.3d at 1149. Plaintiff argues this does not justify the ALJ's rejection of Dr. Mangione-Lambie's opinion, given that Dr. Mangione-Lambie herself recognized plaintiff performed well in finding him to be not limited in understanding, remembering and following simple tasks, and only mildly limited with respect to understanding, remembering and following complex tasks and learning new tasks. <u>See</u> Tr. 197. However, that performance – and Dr. Mangione-Lambie's recognition thereof – does not account for the other moderate, marked and severe mental functional limitations she found. <u>See</u> <u>id.</u>

The undersigned also disagrees with plaintiff that the ALJ erred in rejecting the diagnosis of delusional disorder, given that no other medical source in the record – including Dr. McRae and, as noted by the ALJ, plaintiff's mental health treatment providers – has made that diagnosis. <u>See</u> Tr. 203, 210, 261-62, 265, 351, 355-56, 358, 363. It is true that Dr. Harrison assessed him with a diagnosis of "possible" delusional disorder (<u>see</u> Tr. 274), but that is not the same thing as diagnosing an <u>actual</u> delusional disorder. Accordingly, the undersigned finds that overall the ALJ did not err in rejecting Dr. Mangione-Lambie.

II.    <u>The ALJ's Assessment of Plaintiff's Residual Functional Capacity</u>

If a disability determination "cannot be made on the basis of medical factors alone at step three of the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." Social

REPORT AND RECOMMENDATION - 10

Security Ruling ("SSR") 96-8p, 1996 WL 374184 *2.  A claimant's residual functional capacity ("RFC") assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work.  See id.  It thus is what the claimant "can still do despite his or her limitations." Id.

A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record.  See id.  However, an inability to work must result from the claimant's "physical or mental impairment(s)." Id.  Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id.  In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

In this case, the ALJ assessed plaintiff with the residual functional capacity to "**perform light work**," but found that he would be "**unable to reach overhead bilaterally**," that he could "**reach to chest level**," that he "**should not work with the public or around children**," and that he could "**perform simple and detailed tasks**." Tr. 24 (emphasis in original).  Plaintiff does not agree with the above RFC assessment, arguing the ALJ erred in failing to make that assessment in relation to the moderate difficulties the ALJ found he had in the domains of social functioning and concentration, persistence or pace at step two and step three of the sequential disability evaluation process.

Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled.  See 20 C.F.R. § 416.920.  At step two thereof, the ALJ must determine if an impairment is "severe." Id.  At step three of the evaluation process, the ALJ must evaluate the claimant's impairments to see if they meet or medically equal any of the impairments listed in 20

C.F. R. Part 404, Subpart P, Appendix 1 (the "Listings"). See 20 C.F.R § 416.920(d); Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999). To support his argument here, plaintiff relies on the language of 20 C.F.R. § 416.920a(d), which provides in relevant part that:

> . . . After we rate the degree of functional limitation resulting from your impairment(s), we will determine the severity of your mental impairment(s).
>
> (1) If we rate the degree of your limitation in the first three functional areas [of activities of daily living, social functioning and concentration, persistence or pace (see 20 C.F.R. § 416.920a(c)(3)] as "none" or "mild" and "none" in the fourth area [of episodes of decompensation (see id.)], we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities (see § 416.921).
>
> (2) If your mental impairment(s) is severe, we must then determine if it meets or is equivalent in severity to a listed mental disorder. We do this by comparing the medical findings about your impairment(s) and the rating of the degree of functional limitation to the criteria of the appropriate listed mental disorder. We will record the presence or absence of the criteria and the rating of the degree of functional limitation on a standard document at the initial and reconsideration levels of the administrative review process, or in the decision at the administrative law judge hearing and Appeals Council levels (in cases in which the Appeals Council issues a decision). . . .
>
> (3) If we find that you have a severe mental impairment(s) that neither meets nor is equivalent in severity to any listing, we will then assess your residual functional capacity.

The undersigned agrees with defendant that nothing in this regulatory language requires the ALJ to include moderate mental functional limitations in the RFC assessment, even though moderate limitations may be found in the functional domains considered at steps two and three of the sequential disability evaluation process. Simply, the determinations at step two and step three are separate and distinct from the residual functional capacity assessment employed at steps four and five. Indeed, SSR 96-8p, expressly provides in relevant part:

> . . . The psychiatric review technique described in . . . [20 C.F.R. §] 416.920a . . . requires adjudicators to assess an individual's limitations and restrictions

REPORT AND RECOMMENDATION - 12

from a mental impairment(s) in [the four functional areas noted above in §
416.920a(c)(3), known also as the "paragraph B" criteria]. The adjudicator
must remember that the limitations identified in the "paragraph B" . . .
criteria are *not* an RFC assessment but are used to rate the severity of mental
impairment(s) at steps 2 and 3 of the sequential [disability] evaluation
process. The mental RFC assessment used at steps 4 and 5 of the sequential
evaluation process *requires a more detailed assessment* by itemizing various
functions contained in the broad categories found in [the "paragraph B"
criteria].

1996 WL 374184 *4 (emphasis added). Accordingly, the ALJ was not required to include in his

assessment of plaintiff's residual functional capacity moderate limitations in social functioning

or in concentration, persistence or pace, merely because he determined that moderate difficulties

existed in those areas at steps two and three.

Plaintiff goes on to argue that the ALJ further erred by failing to include all of the mental

functional limitations found by Dr. Harrison. In terms of Dr. Harrison's findings and evaluation

report, the ALJ stated as follows:

. . . [Dr.] Harrison . . . opined that the claimant could understand, remember,
and complete simple and some familiar complex tasks through a normal
week. However, she did not think the claimant could perform complex tasks
on a consistent basis. Dr. Harrison thought the claimant should not interact
extensively with the public, children, or other vulnerable individuals. She
thought the claimant could interact appropriately with supervisors and a few
coworkers. Dr. Harrison thought the claimant would need guidance with
complex, important plans and decisions (Exhibit 9F). I assign significant
weight to the opinion of Dr. Harrison. Although she did not examine the
claimant, she is an expert in evaluating the psychological issues in disability
claims before the Social Security Administration and her opinion is
appropriately accorded weight . . .

Tr. 27. Plaintiff asserts the ALJ erred here by not including all of the mental limitations that Dr.

Harrison checked in the state agency mental residual functional capacity assessment ("MRFCA")

form she completed. See Tr. 268-69.

Defendant argues it is the narrative section contained in Section III of that form – titled

"FUNCTIONAL CAPACITY ASSESSMENT" (see Tr. 270) – rather than the individual mental

REPORT AND RECOMMENDATION - 13

funcitonal limitations set forth in check-box form in Section I thereof (see Tr. 2698-69) – titled "SUMMARY CONCLUSIONS" – that the ALJ is to consider.  In reply thereto, plaintiff cites a prior ruling in Hartman v. Astrue, Case No. 3:07-cv-05644-KLS, in which the undersigned stated in relevant part as follows:

> Plaintiff . . . argues that the ALJ failed to give any reasons for not adopting the other moderate limitations noted . . . in Section I [of the MRFCA form]. . . . [T]he undersigned agrees.  The lack of any rationale for rejecting those limitations was error.  Defendant argues plaintiff's argument is misplaced, because section I of the form – wherein those moderate limitations are noted – is not the assessment of her mental residual functional capacity.  Instead, relying on the Social Security Administration's Program Operations Manual System ("POMS"), defendant asserts that it is section III . . . [,] which constitutes that assessment, and the ALJ thus properly did not include any limitations from section I.
> The undersigned disagrees with defendant's position.  The POMS does provide in relevant part as follows:
>
> > **NOTE:** The purpose of section I ("Summary Conclusion") . . . is chiefly to have a worksheet to ensure that the psychiatrist or psychologist has considered each of these pertinent mental activities and the claimant's . . . degree of limitation for sustaining these activities over a normal workday and workweek on an ongoing, appropriate, and independent basis.  **It is the narrative** written by the psychiatrist or psychologist **in section III** ("Functional Capacity Assessment") . . . **that adjudicators are to use as the assessment of RFC**.  Adjudicators must take the RFC assessment **in section III** and decide what significance the elements discussed in this RFC assessment have in terms of the person's ability to meet the mental demands of past work or other work.  This must be done carefully using the adjudicator's informed professional judgment.
>
> POMS DI 25020.010(B)(1), https://secure.ssa.gov/apps10/poms.nsf/lnx/ 0425020010!opendocument (emphasis in original).  In addition, it is true that even though it "does not have the force of law," the Ninth Circuit has recognized the POMS as constituting "persuasive authority." Warre v. Commissioner of Social Sec. Admin., 439 F.3d 1001, 1005 (9th Cir. 2006).
> Nevertheless, while the POMS may govern how an ALJ is to view the [MRFCA form] – and may be taken into consideration by the Court in evaluating the ALJ's treatment thereof as well – this does not mean the evaluating psychologists themselves felt that they were governed by it or took

it into consideration in making their findings.  That is, as pointed out by plaintiff, section III of the form directs the evaluator to elaborate and explain the summary conclusions they drew in regard to the limitations noted in section I.  There is no direction given on that form to indicate to the evaluator that he or she should treat section III as constituting the claimant's sole and entire mental residual functional capacity.  Accordingly, it is not at all clear that [those evaluators] intended their section I findings to be ignored or not considered.  While certainly this discrepancy between the POMS and the language of the form itself may create some difficulties for the ALJ in determining how to go about evaluating such evidence, that is an issue for the Social Security Administration to resolve, and not a valid reason to discount potentially significant probative findings.

Id., ECF # 18, pp. 7-8.

Plaintiff also points to the undersigned's Report and Recommendation in Gibbs v. Astrue, Case No. 3:09-cv-05114-RJB, in which defendant's argument that it is the MRFCA form's Section III to which the ALJ's RFC assessment should be compared was rejected, because defendant provided "no legal basis for why this should be so, or why the statements contained in the narrative section are more credible or reliable" than the checked-off limitations contained in Section I, and because to the extent ALJ actually relied on Section III, he did not explain why he did so.  Id., ECF #27, p. 11.  In upholding the undersigned's findings in Gibbs, the Court further stated in relevant part as follows:

Defendant asserts that the [MRFCA] form . . . [was] correctly completed in accordance with the instructions printed on the form, and that the ALJ correctly interpreted the form. . . .  The Defendant states that the ALJ relied on . . .and . . . incorporated the opinions written in the "Functional Capacity Assessment" section for the form, also referred to as the narrative section in this order, into his residual functional capacity finding. . . .  Thus, the Defendant argues, the ALJ interpreted the form consistent with the instructions printed on the form. . . .

Defendant also argues that the Report and Recommendation would require that the ALJ adopt the moderate limitations identified in the "Summary Conclusions" section, which would be a misinterpretation of the form. . . .

Plaintiff contends that the Report and Recommendation is correct and that the Defendant has failed to show how the narrative portion of the report

incorporated each of the . . . limitations [checked off in the "Summary Conclusions" of the MRFCA form]. . . .

        The Defendant's argument is not persuasive. First, the Report and Recommendation does not require the ALJ to "adopt" the moderate limitations identified in the "Summary Conclusions" section. The Report and Recommendation states the ALJ's "assessment fails to adequately account for a number of [the] limitations . . . found." . . . The Report and Recommendation only requires that the moderate limitations be addressed by the ALJ, which was not done in this case. It does not require that the ALJ "adopt" or "incorporate" the Summary Conclusions section into his findings.

        Second, the Report and Recommendation does not misinterpret the form. The narrative section instructions explicitly states, "Explain your summary conclusions in narrative form." . . . The two sections, the "summary conclusions" and "functional capacity assessment" or narrative section, are inextricably linked. [The evaluators who completed the form] failed to adequately explain the summary conclusions in the narrative section of the form. Therefore, it would have been error for the ALJ to adopt the statements in the narrative section of the form without explanation, when the narrative section did not explain the summary conclusions. The ALJ need not adopt the summary conclusions as findings, but the ALJ should have, at the least, explained the deficiencies in the narrative section in relation to the summary conclusions.

Id., ECF #32, pp. 5-6.

        Accordingly, given the Court's above prior determinations regarding this issue, plaintiff argues the ALJ was required to address the limitations checked off by Dr. Harrison in Section I of the MRFC form. The undersigned does acknowledge the approach the Court has taken in the above cases in regard to that form. Further, more recently in Charron v. Astrue, Case No. 3:10-cv-05489-RBL, the undersigned again addressed this issue, stating in relevant part:

        . . . Citing to the . . . POMS . . . , defendant argues the ALJ did not have to adopt the . . . limitations checked in Section I of the MRFCA [form]. It is true that the POMS provides in relevant part as follows:

        **NOTE:** The purpose of section I ("Summary Conclusion") . . . is chiefly to have a worksheet to ensure that the psychiatrist or psychologist has considered each of these pertinent mental activities and the claimant's . . . degree of limitation for sustaining these activities over a normal workday and workweek on an ongoing, appropriate, and independent basis. **It is the narrative** written by the psychiatrist or psychologist

REPORT AND RECOMMENDATION - 16

in section III ("Functional Capacity Assessment") . . . **that adjudicators are to use as the assessment of RFC**. Adjudicators must take the RFC assessment **in section III** and decide what significance the elements discussed in this RFC assessment have in terms of the person's ability to meet the mental demands of past work or other work. This must be done carefully using the adjudicator's informed professional judgment.

POMS DI 25020.010(B)(1), https://secure.ssa.gov/apps10/poms.nsf/lnx/ 0425020010!opendocument (emphasis in original). It is true as well that the Ninth Circuit has recognized the POMS as "persuasive authority," even though it "does not have the force of law." <u>Warre v. Commissioner of Social Sec. Admin.</u>, 439 F.3d 1001, 1005 (9th Cir. 2006). But it is not entirely clear that the narrative statements contained in Section III are to be adopted to the complete exclusion of the summary conclusions contained in Section I, rather than to be read merely as an explanation thereof. In any event, the ALJ did not make clear that this is what he was doing, and so remand for clarification of this is required.

<u>Id.</u>, ECF #18, p. 8 (internal footnote omitted).

In <u>Thompson v. Astrue</u>, Case No. 3:09-cv-05792-RBL, though, the undersigned, without reference to those prior determinations, found as follows in regard to the MRFC form:

Plaintiff argues the ALJ erred in failing to specifically discuss or state any reason for not adopting the . . . mental functional limitations . . . checked off in Section I . . . of the [MRFCA] form . . . Instead, the ALJ looked to the explanation of [the] Section I "summary conclusions" that [was] provided in "narrative form" in Section III . . . of that same form. Plaintiff argues the ALJ was required to consider all the findings . . . provided [in the MRFCA form], including the limitations checked in Section I.

The undersigned agrees with defendant, however, that pursuant to the directive contained in the . . . POMS . . . , "**[i]t is the narrative** written by the psychiatrist or psychologist **in [S]ection III . . . that adjudicators are to use as the assessment of RFC**." POMS DI 25020.010(B)(1)[, https://secure.ssa. gov/apps10/poms.nsf/lnx/0425020010!opendocument] (emphasis in original). It is true, as plaintiff notes, that the POMS "does not have the force of law." <u>Warre v. Commissioner of Social Sec. Admin.</u>, 439 F.3d 1001, 1005 (9th Cir. 2006). Nevertheless, the POMS has been recognized as "persuasive authority" in the Ninth Circuit. <u>Id.</u> Nor does the undersigned find or plaintiff provide any valid reasons for not following that directive in this case.

Plaintiff argues the same POMS section provides that the functional abilities set forth in Section I are the mental abilities needed for any job, and that the psychologist completing an RFC assessment must complete Section I

to ensure they have considered each of those mental abilities. <u>See</u> POMS DI 25020.010(B)(1), (2)[, https://secure.ssa.gov/apps10/poms.nsf/Inx/ 0425020010].  But neither of these provisions is inconsistent with the requirement that the adjudicator – in this case the ALJ – look to Section III, and not Section I, for the psychologist's RFC assessment.  Plaintiff posits there is nothing to indicate [the evaluator who completed the form] actually considered and took into account all the limitations he checked in Section I, but it would be unreasonable to assume the opposite: that is, that even though all of those boxes had been checked, [the evaluator] did not even consider or take them into account when he then went on to complete Section III.

<u>Id.</u>, ECF #27, pp. 12-13 (internal footnotes omitted).  The Court then adopted this determination, but without comment. <u>See</u> <u>id.</u>, ECF #28.

Most recently, noting the conflict between the undersigned's determination in <u>Thompson</u> and the prior determination in <u>Charron</u>, the Court declined to adopt the undersigned's reasoning employed in <u>Charron</u>, explaining in relevant part as follows:

The MRFCA . . . form . . . contains three sections: (I) Summary Conclusions; (II) Remarks; and (III) Functional Capacity Assessment, describing a claimant's work-related limitations in a narrative.  The . . . POMS . . . instructs ALJs to focus on the narrative contained in Section III of the MRFCA [form].  The POMS indicates that the purpose of Section I is to provide the psychologist or psychiatrist with a worksheet to insure that each of the listed mental activities has been considered in determining the claimant's residual functional capacity ("RFC").

Here, Judge Strombom recommended reversal based in part upon the ALJ's failure to adopt the . . . limitations . . . noted in Section I of the MRFCA [form].  That recommendation was based upon Judge Strombom's reasoning that "it is not entirely clear that the narrative statements contained in Section III are to be adopted to the complete exclusion of the summary conclusions contained in Section I, rather than to be read merely as an explanation thereof." . . .  Judge Strombom recommended that this matter be reversed because "the ALJ did not make clear that this was what he was doing, and so remand for clarification of this is required." . . .

The Commissioner urges that the correct analysis of the interaction between Section I and Section III is that found in *Thompson v. Astrue*, No. C09-5792RBL.  There, in responding to a challenge that the ALJ failed to take into account or discuss . . . limitations noted in Section I, the Magistrate Judge emphasized that it is the narrative in Section III that controls.  Further, the Magistrate Judge found that Section I limitations noted did not need to be discussed by the ALJ because it is reasonable to assume that the psychologist included the Section I limitations in completing Section III. . . .

REPORT AND RECOMMENDATION - 18

> The Court agrees with the Commissioner. The better analysis is that found in *Thompson*. Therefore, the ALJ did not err by failing to include in claimant's RFC [the limitation contained in Section I of the MRFC form sought to be included therein].

Charron, Case No. 3:10-cv-05489-RBL, ECF #20, pp. 2-3. Having considered all of the above determinations on this issue, as well as the MRFCA form itself and the express language of the POMS, the undersigned agrees with the Court's holding in <u>Charron</u> – and the undersigned's own reasoning in <u>Thompson</u> – that it is the narrative in Section III of the MRFC that controls, and thus that the ALJ is not required to specifically address the limitations checked off in Section I. The undersigned therefore finds the ALJ did not err in failing to expressly address the limitations Dr. Harrison checked off in Section I of the MRFC form.

III.     The ALJ's Findings at Step Five

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. <u>See</u> <u>Tackett</u>, 180 F.3d at 1098-99; 20 C.F.R. § 416.920(d), (e). The ALJ can do this through the testimony of a vocational expert or by reference to defendant's Medical-Vocational Guidelines (the "Grids"). <u>Tackett</u>, 180 F.3d at 1100-1101; <u>Osenbrock v. Apfel</u>, 240 F.3d 1157, 1162 (9th Cir. 2000).

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. <u>See</u> <u>Martinez v. Heckler</u>, 807 F.2d 771, 774 (9th Cir. 1987); <u>Gallant v. Heckler</u>, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. <u>See</u> <u>Embrey v. Bowen</u>, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." <u>Id.</u>

REPORT AND RECOMMENDATION - 19

(citations omitted).  The ALJ, however, may omit from that description those limitations he or she finds do not exist. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

At the hearing, the ALJ posed a hypothetical question to the vocational expert containing substantially the same limitations as were included in the ALJ's assessment of plaintiff's residual functional capacity. See Tr. 47.  In response thereto, the vocational expert testified that there were other jobs an individual with the same limitations – and with the same age, education and work background as plaintiff – would be able to do. See Tr. 47-49.  Based on the vocational expert's testimony, the ALJ found plaintiff to be capable of performing other jobs existing in significant numbers in the national economy. See Tr. 29-30.

Plaintiff argues that because the ALJ erred in evaluating the medical evidence in the record, and thus in assessing his residual functional capacity, the hypothetical question he posed to the vocational expert does not accurately describe his functional limitations, and therefore the ALJ's step five determination cannot be upheld.  But because the ALJ did not err as plaintiff argues in regard to evaluating the medical evidence in the record or in assessing plaintiff's RFC, the ALJ also did not err here at step five.

CONCLUSION

Based on the foregoing discussion, the Court should find the ALJ properly concluded plaintiff was not disabled.  Accordingly, the Court should affirm defendant's decision to deny benefits.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal. See Thomas v. Arn,

REPORT AND RECOMMENDATION - 20

474 U.S. 140 (1985).  Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **July 15, 2011**, as noted in the caption.

DATED this 27th day of June, 2011.


Karen L. Strombom
United States Magistrate Judge